UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| PATRICIA L. RYAN, )<br>)<br>    Plaintiff )<br>)<br>v. )<br>)<br>BUCKSPORT REGIONAL HEALTH )<br>CENTER, )<br>)<br>    Defendant ) | Civil Docket No.: 1:12-cv-00251-GZS |

**PLAINTIFF'S MOTION IN LIMINE
CONCERNING CERTAIN EVIDENTIARY MATTERS**

Plaintiff moves in limine to exclude references to or any evidence of three separate issues or incidents, none of which are relevant and all of which are prejudicial and therefore inadmissible pursuant to F.R.Evid. 403 and 404(b).

Background

This is a disability discrimination claim in which Plaintiff was discharged from her employment following her taking short-term disability ("STD") to deal with what Defendant's own clinical providers diagnosed variously as a generalized anxiety disorder, a recurrent major depressive disorder, and a dysthymic disorder. Patricia Ryan is an adult nurse practitioner who has worked successfully as a nurse and then an adult nurse practitioner for many years. In late March of 2010, she faced a serious mid-life crisis when she discovered that her husband was apparently having an affair. By May of 2010, she realized that she was no longer in a position to continue working in her demanding profession as an adult nurse practitioner and she applied for and received STD leave. By August 13, 2010, her treating psychologist, Dr. Margo Bonner-

Thurston, recommended her return to work, part-time from Wednesday, September 1, 2010, until Friday, September 10, 2010, and then full-time as of Monday, September 13, 2010.  Her treating psychologist passed on the request that Ms. Ryan be allowed to work four 10-hour days rather than five eight-hour days but this was never clinically required by Dr. Thurston.  Bucksport Regional Health Center ("BRHC") seized upon this preference for four 10-hour days and, on August 18, 2010, told Mr. Ryan that her "services will not needed (sic) on or after September 1, 2010," and told her that her personal belongings would be boxed and delivered to her home address.  Even when explicitly advised that the request for four 10-hour workdays was one of preference, not clinical necessity, the Executive Director of BRHC, John N. Corrigan, refused to budge.  He later signed a letter to the Maine Human Rights Commission ("MHRC") which included the following statement:

> BRHC had no indication how long Ms. Ryan was going to be out and what her capacity would be upon her return.  Since she was deemed unable to see patients when she went out on leave, what assurance could be made for patient safety in the future?  Patient care is the ultimate reason for this discharge.  How could BRHC monitor patient care in the exam room?

Ms. Ryan has filed a complaint alleging that she was disabled, was regarded as disabled, and had a record of a disability.  As her initial treatment for her mental health diagnoses was with BRHC, and her two therapists there agree that their diagnoses necessarily involved a period of significant impairment of longer than six months, there is little question that Ms. Ryan was actually disabled within the meaning of 5 M.R.S.A. § 4553-A.  She was also substantially limited in the major life activities of working and concentration.  By virtue of the STD paperwork she submitted to BRHC and BRHC's own provider records, she had a record of a disability.  Finally, as referenced by the submission quoted above by BRHC to the MHRC, she was regarded as

disabled on the basis of her mental health diagnoses and was wrongly considered a threat to patient safety because of that diagnosis.

The defense here is that Ms. Ryan's actual disability lasted only from May 10, 2010, when Dr. Lieberman (a BRHC employee) removed her from the workforce until her psychologist suggested she return to work as of September 1, 2010.  Thus, Defendant is arguing that Ms. Ryan was not disabled enough.

### Drinking Episode(s)

While Ms. Ryan was out on STD, she self-medicated briefly with alcohol.  This type of evidence would be generally prohibited under F.R.Evid. 404(b)(1), as it would be an attempt "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  It would be an attempt to show that Ms. Ryan was unreliable to have begun drinking and therefore was unreliable to be returned to the workplace.  Rule 404(b)(1) prohibits such use.

As Ms. Ryan's state of mind is not an issue here, this evidence would not be admissible to prove motive or intent, which is the only exception to the exclusion of such character evidence under F.R.Evid. 404(b)(2).

The only other possible purpose for admitting this evidence would be to demonstrate how deeply disabled Ms. Ryan had become during her mental health crisis:  she was depressed enough to break with long-standing habits and begin drinking to excess.  While this might be a plausible reason for Plaintiff, who is trying to prove the existence of a disability, to proffer the evidence, it would serve no purpose for Defendant to proffer this evidence to demonstrate that Ms. Ryan's mental health crisis was worse than will be otherwise described.  The real purpose of

proffering the evidence would be to put Ms. Ryan in disrepute before the jury. Thus, it is also inadmissible under F.R.Evid. 403 because it has no probative value to show the point that Defendant is advancing (that Ms. Ryan was not disabled) and whatever probative value it has is substantially outweighed by the chance of unfair prejudice to Ms. Ryan should any member of the jury have strong feelings about drinking or, in particular, about medical professionals drinking.

### Altercation With Her Husband

Ms. Ryan reported to Dr. Lieberman on July 2, 2010, that she had had a very traumatic evening in which she and her husband were involved in a physical altercation. It began with a verbal abuse from her husband, escalated to an open-handed slap by Ms. Ryan of her husband, and followed with a very forcible retaliation by Mr. Ryan, who was subsequently incarcerated. She suffered a contusion of the face and contusion of the scalp secondary to this domestic violence.

Once again, proffering evidence that Ms. Ryan got into an altercation with her husband is prohibited proof of another act to improperly demonstrate Ms. Ryan's character and cannot be admitted because of F.R.Evid. 404(b)(1). Additionally, injecting the issue of domestic violence into this discrimination claim will simply mislead the jury and cause Ms. Ryan unfair prejudice under F.R.Evid. 403. The only possible relevance of the evidence would be to show how badly disabled Ms. Ryan was. However, this would be evidence that Ms. Ryan might be entitled to offer but which BRHC, which denies the disability, surely has no legitimate reason for advancing. This evidence should be excluded, as should the evidence of the brief period of drinking.

Evidence of Other Employment Discrimination Claim

Ms. Ryan joined BRHC after she left Waldo County General Hospital ("WCGH") in mid-October of 2009. Her dispute with WCGH stems around the fact that it began breaching its promise to her to give her 40 hours of work per week. She was credentialed to work in the Emergency Department, in out-patient offices, and as a hospitalist at WCGH, itself. Beginning in January of 2009, she saw her scheduled hours as a hospitalist gradually decline as the hours for a similarly situated male P.A. were gradually increased. There were weeks in which he earned 40 hours of regular time and 44 hours of overtime and she was given but 12 hours of work. She has a breach of contract, gender discrimination claim against WCGH pending in Waldo County Superior Court.

Any attempt to bring in evidence of this other employment discrimination claim would serve only one improper purpose: to show that Ms. Ryan is overly litigious. It would seek to create an inference that the claim against WCGH is without foundation such that the current claim against BRHC is without foundation. However, Ms. Ryan's alleged character for litigiousness is not at issue in this case. Once again, her state of mind is not an issue and this evidence is inadmissible whether one conducts the analysis pursuant to F.R.Evid. 404(b) or F.R.Evid. 403.

There are strong policy reasons to not inform this jury of another pending employment discrimination claim brought by Ms. Ryan. 5 M.R.S.A. § 4572(1)(E) makes it illegal for an employer "to discriminate in any manner against individuals because they have opposed a practice that would be a violation of this Act or because they have made a charge, testified or assisted in any investigation, proceeding or hearing under this Act." If it would be illegal

employment discrimination for one employer to penalize an employee because she has filed a claim against another employer, it should equally offend the judicial system for that same employer to invite a jury to decide the instant employment discrimination on whether Ms. Ryan had brought a *bona fide* claim against another employer or the mere fact that she had brought a claim against another employer.

The undersigned counsel can find no federal case precisely on point.  However, the Maine Law Court has, in <u>Fortier v. Lovejoy</u>, 520 A.2d 1303 (Me. 1987), overturned a defense verdict that was obtained by admission of evidence that the plaintiff had been involved in prior motor vehicle accidents.  It held:

> The prejudicial effect of the references to Fortier's prior accidents substantially outweighed their probative value.  Liability was a hotly contested issue at trial.  The determination of liability hinged upon whether the jury believed Fortier's version of the accident (that Lovejoy negligently cut across Fortier's path) or Lovejoy's version (that Fortier in the process of driving straight across the intersection negligently tried to pass Lovejoy by pulling into the left turning lane).  The presiding justice correctly ruled that the evidence of prior accidents was not admissible on the liability issue.  *See* M.R.Evid. 404(b).  However, he failed to recognize that allowing the jury to learn of the prior accidents even as part of Lovejoy's proof of prior damage to Fortier's hand and knee created a substantial risk that the jurors would be influenced in their determination of liability.  The jurors could well have inferred from the fact of Fortier's earlier involvement in motor vehicle accidents that he was an accident-prone driver and that he was likely to have been driving in a negligent manner at the time of his encounter with Lovejoy.  In the present circumstances, any attempt to instruct the jury to use the evidence of prior motor vehicle accidents only in assessing damages would mean little to the lay jurors and would run the risk of further accentuating the significance of those accidents in their minds.

As M.R.Evid. 403 and 404(b) are functionally identical to the federal rules, the principle enunciated in <u>Fortier v. Lovejoy</u> is equally applicable here in federal court.  There is no real argument that it would be admissible on the damages issue, only, as Ms. Ryan, before she left

WCGH following her disagreement over the failure to give her 40 hours per week, had been offered her position with BRHC and, until discovery of her husband's affair, was a productive employee working for BRHC. Thus, any probative value as to damages is substantially outweighed by the specter of wrongly including the issue of litigiousness into this litigation. There is no mention in any of the healthcare records for the people who treated Ms. Ryan for her disability of the events at WCGH being an issue in her functioning. The prior occasion on which Ms. Ryan was disappointed by an employer deals with no discrete body part. Moreover, while a physical injury can be de-linked from its cause, a mental injury cannot. To be distressed has no meaning absent identification of the cause of the distress.

## Conclusion

For all of the above reasons, evidence of the use of alcohol, the one or more incidents of domestic violence, and the prior claim against WCGH is inadmissible and should not be mentioned before the jury or introduced into evidence.

Dated: July 22, 2013     /s/ Arthur J. Greif
                         Arthur J. Greif, Esq.  BRN: 2551
                         GILBERT & GREIF, P.A.
                         82 Columbia Street
                         P.O. Box 2339
                         Bangor, Maine  04402-2339
                         Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I, Arthur J. Greif, Esq., attorney for Plaintiff, hereby certify that on this date I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to all registered participants.

Dated: July 22, 2013     /s/ Arthur J. Greif
                         Arthur J. Greif, Esq.
                         Attorney for Plaintiff

5553O:\RYAN.PAT BUCKSPORT\Pleadings\MOTIONS\evidentiary.wpd